UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

CORRIE BARNES,

Plaintiff,

v. Case No. 2:25-cv-405-KCD-KRH

CAPTAIN SCUDERA, *et al.*,

Defendant.
_____________________________________/

**ORDER**

Corrie Barnes, a prisoner of the Florida Department of Corrections ("DOC"), sues Captain Scudera and Nurse Camacho under 42 U.S.C. § 1983. An earlier order dismissed some defendants and some claims but allowed this action to proceed "for the individual-capacity medical deliberate indifference and retaliation claims against Defendants Scudera and Camacho." (Doc. 10 at 1.)

This case is based on an incident that occurred at the Desoto Correctional Institution ("DCI"). Defendant Scudera was captain at DCI, and Defendant Camacho was a nurse. Defendants filed separate motions to dismiss under Fed. R. Civ. P. 12(b)(6), and Plaintiff opposes each motion. (Docs. 25, 28, 33, and 34.) The motions seek dismissal both because Plaintiff failed to exhaust

his claims through the DOC's grievance process and because the complaint lacks merit. Both arguments prevail.

## I. FACTUAL ALLEGATIONS

Plaintiff alleges that on September 23, 2023, he filed a Prison Rape Elimination Act ("PREA") complaint at DCI, alleging that Officer Suarez intentionally groped his penis during a pat search. (Doc. 1 at 5, ¶ 2.) On that same day, Plaintiff reported the incident to the shift supervisor—Defendant Scudera—but he did not file the PREA complaint until three days later.[1] (*Id.*) In the interim, Scudera allegedly asked Plaintiff to drop the complaint against Officer Suarez in exchange for the return of Plaintiff's property, including a tablet and some tennis shoes. (*Id.* ¶ 3.) Plaintiff did not expressly agree (he remained silent), but another officer returned his shoes and the missing tablet later that night. (*Id.*)

Plaintiff was interviewed for PREA assessment on the same day that Scudera filed the PREA complaint. But during the intervening days, Plaintiff allegedly experienced psychological and physical distress and began experiencing a stomach illness that caused cramps, fever, vomiting, sweating, and dizziness. (*Id.* ¶ 5.) Over the next several days Plaintiff requested medical

[1] The earlier order (Doc. 10 at 7–8) dismisses any claim based on Defendant Scudera's delay in filing the PREA complaint.

treatment, but the requests were allegedly "either stymied by Defendant Scudera, ignored, or inadequately acted upon." (*Id.* at 6, ¶ 6.)

On October 7, 2023 (two weeks after the alleged PREA incident), Plaintiff became very ill, and after his cellmate "bang[ed]on his cell door in an attempt to summon security," Scudera came to Plaintiff 's cell and took him to the prison infirmary. (Doc. 1 at 6, ¶¶ 7-8.) Plaintiff allegedly overheard Scudera tell Defendant Nurse Camacho that Plaintiff was the one who made the PREA complaint. (*Id.* ¶ 9.) Plaintiff maintains that Camacho was rude and "abrupt and careless in her examination of Plaintiff," and that she only provided Epsom salt without further treatment.[2] (*Id.* ¶ 9.) Plaintiff was returned to his cell, however, his symptoms continued. (*Id.* ¶¶ 9-10.)

After Scudera's shift ended, Plaintiff alleges that his symptoms "worsened" and he was returned to medical, where Camacho placed Plaintiff in an infirmary cell for observation. (*Id.*) Hours later, on October 8, 2023, other medical personnel determined that Plaintiff should be taken to an outside hospital, where he received abdominal surgery and a diagnosis of pneumonia. (*Id.* at 7, ¶ 12.) Plaintiff faults Camacho for not ordering his transport to a hospital. (Id. at 6, ¶ 11.)

---

[2] According to the grievance forms, Plaintiff was prescribed milk of magnesia.

The remaining claims against Scudera and Camacho are: (1) medical deliberate indifference because of the alleged delay in providing medical care and (2) the retaliation based on the delay in providing medical care allegedly because Plaintiff had filed a PREA complaint against a non-defendant officer.

## II. GRIEVANCE PROCEDURES

Defendants correctly argue that exhaustion of administrative remedies is required here. Under 42 U.S.C. § 1997e(a), "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."

### A. DOC's Grievance Procedures

Chapter 33-103, Florida Administrative Code, establishes the procedures for prisoner grievances and appeals. The purpose of the grievance process "is to provide an inmate with a channel for the administrative settlement of a grievance" and to provide "the inmate with the opportunity of having a grievance heard and considered, [which] will assist the Department by providing additional means for internal resolution of problems and improving lines of communication." § 33-103.001. The procedures establish (1) what issues can and cannot be addressed in the grievance process, (2) deadlines for filing, responding to, and appealing a grievance, and (3) forms

that must be used in the grievance process. The three steps in the process are an informal grievance, a formal grievance, and an appeal to the Secretary.

Except for a few specific issues not relevant here, the first step in the grievance process is for the inmate to submit the required form "by placing the informal grievance in a locked grievance box," where it will be retrieved and "forwarded to the staff member who is responsible in the particular area of the problem . . . ." § 33-103.005(1). The response to the informal grievance must be written, returned to the inmate with both the original grievance and one copy, and state the reason or reasons why the grievance was approved, denied, or returned without action. § 33-103.005(4).

The second step is the filing of a formal grievance, which is submitted to one of the wardens at the institution. Each formal grievance "must address only one issue or complaint" and include a copy of the informal grievance and response unless exempted by regulation. § 33-103.006(2). A formal grievance is retrieved and processed daily during the workweek, date-stamped, and recorded on a grievance log. And the inmate is provided a receipt. A designated institutional official investigates the issue and provides the inmate a response within twenty days. If not satisfied with the response, the inmate may appeal.

The third step is an appeal to the Office of the Secretary. Each appeal is limited to only one issue and must include a copy of both the formal grievance

and the response. § 33-103.007(2). The Bureau of Policy Management and Inmate Appeals reviews, investigates, and responds to each appeal.

The procedures allow both an inmate and a responding official to request an extension of each deadline within the grievance process. §§ 33-1003.011(1) and (4). Also, the inmate may proceed to the next step in the process if a response is not timely received, but "[i]f this occurs, the [inmate] must clearly indicate this fact when filing at the next step." § 33-103.011(4).

**B. Controlling Legal Principles**

A prisoner must properly exhaust the prison's administrative remedies. "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). The failure to "properly exhaust" the administrative remedies will bar a prisoner from pursuing a claim in federal court. "[S]aying that a party may not sue in federal court *until* the party first *pursues* all available avenues of administrative review necessarily means that, if the party never pursues all available avenues of administrative review, the person will never be able to sue in federal court." *Ngo*, 548 U.S. at 100; *see Johnson v. Meadows*, 418 F.3d 1152, 1159 (11th Cir. 2005) ("[W]e hold that the PLRA's exhaustion requirement does contain a

procedural default component: Prisoners must timely meet the deadlines or the good cause standard of Georgia's administrative grievance procedures before filing a federal claim.").

"[T]he purpose of administrative exhaustion . . . 'is to put the [administrative authority] on notice of all issues in contention and to allow the [authority] an opportunity to investigate those issues.'" *Chandler v. Crosby*, 379 F.3d 1278, 1287 (11th Cir. 2004) (quoting *Griffin v. Carlin*, 755 F.2d 1516, 1531 (11th Cir. 1985)). Consequently, "[a] prisoner must exhaust each claim that he seeks to present in court." *Arias v. Perez*, 758 F. App'x 878, 880 (11th Cir. 2019); *accord Jones*, 549 U.S. at 219-20 ("All agree that no unexhausted claim may be considered."). But if a complaint alleges some claims that are exhausted and some that are not, "the court proceeds with the good and leaves the bad." *Jones*, 549 U.S. at 221.

This mandatory exhaustion requirement applies even when administrative remedies do not allow the requested relief. *Ngo*, 548 U.S. 85 ("[A] prisoner must now exhaust administrative remedies even where the relief sought — monetary damages — cannot be granted by the administrative process."); *Booth v. Churner*, 532 U.S. 731, 736 (2001) ("[W]e think that Congress has mandated exhaustion clearly enough, regardless of the relief offered through administrative procedures."). However, a prisoner must

exhaust only those administrative remedies that are "available." *Ross v. Blake*, 578 U.S. 632, 642 (2016) ("[A]n inmate is required to exhaust those, but only those, grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'"). The Eleventh Circuit has further explained the meaning of "availability":

> In *Ross v. Blake*, 136 S. Ct. 1850, 1856–57 (2016), the Supreme Court held that § 1997e(a)'s exhaustion requirement is "mandatory" and that courts therefore "may not excuse a failure to exhaust" due to "special circumstances." There is an exception to the exhaustion requirement, however, that is "baked into" § 1997e(a)'s text: "[a]n inmate need exhaust only such administrative remedies as are 'available.' " *Id.* at 1862. . . . The Court "note[d] as relevant here three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief:" (1) when the procedure "operates as a simple dead end — with officers unable or consistently unwilling to provide any relief to aggrieved inmates;" (2) when the administrative scheme is "so opaque that it becomes, practically speaking, incapable of use;" and (3) "when prison administrators thwart inmates from taking advantage of a grievance process though machination, misrepresentation, or intimidation." *Id.* at 1859–60.

*Varner v. Shepard*, 11 F. 4th 1252, 1258 (11th Cir. 2021).

A defendant has the burden of proving that a prisoner did not fully exhaust his administrative remedies. *Jones v. Bock*, 549 U.S. 199, 216 (2007); *Dixon v. United States*, 548 U.S. 1, 8 (2006) (recognizing that the burdens of both production and persuasion are on the same party). Defendants here support their motions with copies of Plaintiff's various grievances and with

affidavits from both the grievance coordinator at the institutional level and the DOC's Bureau Chief in charge of grievance appeals. (Doc. 25-1; Exhibits A and B, Doc. 33-1 and 33-2.) As determined below, Plaintiff failed to properly exhaust the relevant claims against Defendants.

**C. Plaintiff's Grievances**

The Eleventh Circuit requires a two-step analysis for deciding whether a prisoner meets the exhaustion requirement:

> First, the court looks to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's version of the facts as true. If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed.
>
> If the complaint is not subject to dismissal at the first step, where the plaintiff's allegations are assumed to be true, the court then proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion. . . . Once the court makes findings on the disputed issues of fact, it then decides whether under those findings the prisoner has exhausted his available administrative remedies.

*Turner v. Burnside*, 541 F.3d 1077, 1082-83 (11th Cir. 2008); *see also Whatley v. Warden, Ware State Prison*, 802 F.3d 1205, 1209 (11th Cir. 2015).

**1. Nurse Camacho**

Plaintiff's allegation that Camacho delayed medical care is based on her actions from October 7, 2023, when she prescribed milk of magnesia and sent

him back to his cell but later had him moved into the infirmary for observation when his condition worsened. On October 23, 2023, Plaintiff filed an informal grievance in which he alleged that Camacho "abandoned her medical duties" by placing him in the infirmary cell in "retaliation" for his filing a PREA complaint. (Doc. 25-1 at 21.) The informal grievance was denied, and he was advised of his "right to submit a formal grievance." (*Id.* at 20.) Plaintiff never filed a formal grievance about Camacho's medical care or alleged retaliation, and he does not contend that he filed a formal grievance regarding these issues. Consequently, even accepting Plaintiff 's version of the facts, the Court finds that, under the first step in *Turner's* two-step analysis, Plaintiff failed to exhaust the administrative grievance process. Moreover, under the second step in *Turner's* two-step analysis, the exhibits refute any claim that exhaustion was complete.

**2. Capt. Scudera**

Plaintiff's allegation that Scudera delayed medical care, or retaliated against him for filing a PREA complaint by delaying medical care, is based on the second October 7, 2023, incident when Plaintiff was returned to the infirmary and moved into a cell in the medical unit for observation. Because Plaintiff was "passed-out" on the floor, Defendant Scudera retrieved a wheelchair, handcuffed Plaintiff, and took him to the infirmary. Without

having first submitted an informal grievance, on October 19, 2023 (nearly two weeks after the incident), Plaintiff filed a formal grievance as an "emergency grievance." The allegations in that formal grievance included the issues in this action, however, the formal grievance was returned without action because the issue was not an emergency and because Plaintiff had not explained why he had skipped the informal grievance step. (Doc. 33-1 at 42-46.)

Five days later, Plaintiff filed an informal grievance, but the allegations were that Scudera failed to follow DOC protocol by not getting a camera to record Plaintiff's condition and movement to the infirmary during the medical emergency. The informal grievance was approved to the extent that the matter was referred to the Inspector General for investigation. Because whether Scudera failed to follow DOC protocol is not an issue in this action, the approval of that grievance failed to exhaust the issues in this action (alleged delay in providing medical care). Consequently, even accepting Plaintiff's version of the facts, the Court finds that, under the first step in *Turner's* two-step analysis, Plaintiff failed to exhaust the administrative grievance process. Moreover, under the second step in *Turner's* two-step analysis, the exhibits show that Plaintiff never properly utilized the grievance process to address the issues in this action.

* * * *

Consequently, Plaintiff failed to properly exhaust the claims alleged in this civil rights action as required by Section 1997e(a). But even assuming exhaustions, his claims lack merit as addressed below.

Although a *pro se* pleading receives a generous interpretation, *see, e.g., Haines v. Kerner*, 404 U.S. 519 (1972), the complaint must meet certain pleading requirements. The complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests" and must provide "more than labels and conclusions [or] a formulaic recitation of the elements of the cause of action." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In short, the "[f]actual allegations must be enough to raise a right to relief above the speculative level[.]" *Twombly*, 550 U.S. at 555. As explained by the Supreme Court:

> Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." As the Court held in *Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929, the pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. *Id.*, at 555, 127 S. Ct. 1955 (citing *Papasan v. Allain*, 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L. Ed. 2d 209 (1986)). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." 550 U.S., at 555, 127 S. Ct. 1955. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.*, at 557, 127 S. Ct. 1955.

*Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009). "*Twombly* [i]s a further articulation of the standard by which to evaluate the sufficiency of all claims brought pursuant to Rule 8(a)." *Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 974 n.43 (11th Cir. 2008). As a consequence, *Twombly* governs a Section 1983 prisoner complaint. *Douglas v. Yates*, 535 F.3d 1316, 1321 (11th Cir. 2008).

On a motion to dismiss under Rule 12(b)(6), the allegations in the complaint are viewed in the light most favorable to the plaintiff. *Omar ex rel. Cannon v. Lindsey*, 334 F.3d 1246, 1247 (11th Cir. 2003), *Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003). The allegations of fact and any reasonable inference must combine to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Additionally, "plausibility" is greater than a mere "possibility" but less than a "probability":

> The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.
>
> [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not "shown" — "that the pleader is entitled to relief."

*Iqbal*, 556 U.S. at 678-79. However, a plaintiff must show "proof of an affirmative causal connection between the official's acts or omissions and the alleged constitutional deprivation' in § 1983 cases." *Rodriguez v. Sec'y, Dep't of Corr.*, 508 F.3d 611, 625 (11th Cir. 2007).

As stated above in more detail, Camacho treated Plaintiff for abdominal issues by prescribing milk of magnesia and sent him back to his cell. A few hours later, Plaintiff "passed-out" and a medical emergency was declared. Scudera then retrieved a wheelchair and took Plaintiff to the infirmary where Camacho had him moved into an observation cell in the medical unit. And after a shift change, Plaintiff 's condition worsened and medical personnel ordered his transport to the local hospital.

A state has the constitutional obligation to provide adequate medical care to those whom it confines. *Adams v. Poag*, 61 F.3d 1537 (11th Cir. 1995); *Mandel v. Doe*, 888 F.2d 783 (11th Cir. 1989). The standard for a prisoner claiming medical mistreatment is well-established: he must allege and show that an official acted with deliberate indifference to a serious medical need. An objectively serious medical need "is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Goebert v. Lee Cnty.*, 510 F.3d 1312, 1326 (11th Cir. 2007). To demonstrate deliberate indifference, a

plaintiff must show the following: "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." *Farrow v. West*, 320 F.3d 1235, 1245 (11th Cir. 2003).

A difference of opinion over matters of medical judgment, in either diagnosis or treatment, supports no constitutional claim. "Where a prisoner has received . . . medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims that sound in tort law." *Hamm v. DeKalb Cnty.*, 774 F.2d 1567, 1575 (11th Cir. 1985); *see Fischer v. Fed. Bureau of Prisons*, 349 F. App'x 372, 374 (11th Cir. 2009). Moreover, a delay in providing "medical treatment may, under certain circumstances, constitute deliberate indifference," *see McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999), but not if the basis for the denial or delay in medical care depends upon a difference of opinion regarding the appropriate treatment:

> But "a simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment" does not support a claim of deliberate indifference. *Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991); *see also Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989). Nor do matters of medical judgment. *Estelle*, 429 U.S. at 107, 97 S. Ct. at 292–93. Deliberate indifference is not established where an inmate received care but desired different modes of treatment. *Hamm v. DeKalb County*, 774 F.2d 1567, 1575 (11th Cir. 1985).

*Easley v. Dep't of Corr.*, 590 F. App'x 860, 869 (11th Cir. 2014).

Scudera acted promptly in getting Plaintiff into a wheelchair and moved to the infirmary, even allegedly violating DOC protocol by not postponing the transfer until he obtained a video camera to record the situation. No plausible claim of delay in medical care can be attributed to Scudera.

As for Camacho, she initially prescribed treatment for Plaintiff's symptoms, and when his condition worsened, she had him moved into a cell in the medical unit for observation. It was not until after Camacho's shift ended, and Plaintiff's condition worsened further, that medical personnel decided that Plaintiff needed treatment at a hospital. No plausible claim of delay in medical care can be attributed to Camacho from these facts.

The motions to dismiss (Docs. 25 and 33) are thus **GRANTED**. The clerk must enter judgment for Defendants and close the case.

**ORDERED** in Fort Myers, Florida on August 17, 2026.

Kyle C. Dudek
United States District Judge

SA: TPA-4
Copies: All Parties of Record